1

HONORABLE RICHARD A. JONES

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

BAYLEY CONSTRUCTION,

11

Plaintiff,

CASE NO. C09-166RAJ

12

v.

ORDER

13

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY, et
al.,

14

15

Defendants.

16

## I.  INTRODUCTION

17

This matter comes before the court on Defendants' motions for summary

18

judgment (Dkt. ## 77, 78, 79).  The court has considered the parties' briefing and

19

supporting evidence, and heard from counsel at oral argument.  For the reasons explained

20

below, the court GRANTS two of the motions (Dkt. ## 77, 78) and DENIES one motion

21

(Dkt. # 79) as moot.

22

## II.    BACKGROUND

23

This lawsuit arises from the Plaintiff's claim for, *inter alia*, insurance coverage

24

from the Defendants,[1] as a result of a lawsuit filed against the Plaintiff in Oregon state

25

26

---

[1] The Defendant insurers fall into four groups:  American Guarantee and Liability Insurance
Company ("American Guarantee"); Travelers Property Casualty Company of America, St. Paul
Mercury Insurance Company, and St. Paul Fire and Marine Insurance Company (collectively

27

28

ORDER – 1

court.  The Oregon lawsuit involved the construction of Gresham Station Shopping Center, and the project was substantially completed during 2000-01.  The shopping center sued the Plaintiff in this case (Bayley Construction ("Bayley"), the shopping center's general contractor), alleging claims of negligence and nuisance based on construction defects that allegedly resulted in water intrusion and property damage.  *See* Skinner Decl. (Dkt. # 81), Ex. A (complaint in Oregon lawsuit).

The Oregon lawsuit was settled, and some of Bayley's insurers paid the settlement fund:  Travelers contributed $ 1 million, Wausau contributed $1 million, and American Guarantee contributed $ 4 million.  After that settlement, the Plaintiff dismissed its claims for a defense against Travelers and Wausau, and assigned to American Guarantee, Travelers, and Wausau its non-dismissed claims for indemnity, each against each other. *See* Def.'s Am. Cross-Cl. (Dkt. # 20) ¶¶ 13-14.

American Guarantee has not released or settled its cross-claims against the other insurers — namely National Union and Travelers — and those cross-claims are the subject of this lawsuit.  *See* Def.'s Am. Cross-Cl. (Dkt. # 20) ¶ 16.

National Union and Travelers now move for summary judgment against American Guarantee's cross-claims against them.  American Guarantee also moved for partial summary judgment to bar Travelers from making a particular argument in defense against American Guarantee's cross-claims.

### III.    ANALYSIS

**A.   Legal Standards.**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving

---

"Travelers"); National Union Fire Insurance Company of Pittsburgh ("National Union"); and Wausau Business Insurance Company ("Wausau").

ORDER – 2

party meets that initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

When a court is asked to determine whether an insurance policy covers a particular loss, the court engages in a two-step analysis. *See McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731 (1992). First, the court must determine whether the type of loss that occurred triggers coverage under the policy. *Id*. The insured bears the burden of proof as to this inquiry. *Id*. Where the insurance policy states that it covers only losses that "occur" during the policy period, the timing of an occurrence "is determined by when damages or injuries take place." *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Sys.*, 111 Wn.2d 452, 465 (1988). In situations where damage occurs over time, the court considers a policy's definition of "occurrence" or other coverage-triggering language to determine whether or to what degree the loss is covered. *See, e.g.*, *Gruol Constr. Co., Inc. v. Insurance Co. of N. Am.*, 11 Wn. App. 632, 635-36 (1974).

If the insured shows that its loss was covered by the insurer's policy, then the court turns to the second step: whether the policy has any applicable exclusions or limitations that would prohibit coverage. *McDonald*, 119 Wn.2d at 731. The insurer has the burden to show that an exclusion or limitation applies. *Id*.

**B.    National Union is Entitled to Judgment as a Matter of Law Because the National Union Policies Treat Continuing Damage as One Occurrence that Happens on the Date the Damage First Commenced.[2]**

It is undisputed that the National Union policies issued to Bayley (the first of which became effective on December 31, 2004) state that National Union

---

[2] This is one argument presented by National Union in its motion for summary judgment. Though its motion presents multiple alternative arguments, this order focuses on National Union's argument related to the scope of coverage. Because the court finds that the National Union policies are not triggered due to their definitions of "continuing damage" and "occurrence," the court need not consider National Union's alternative arguments.

ORDER – 3

will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an **Insured Contract** because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** that takes place during the **Policy Period** and is caused by an **Occurrence** happening anywhere in the world.

Skinner Decl. (Dkt. # 81), Ex. E.  The policies also define "Occurrence" to mean

an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the Insured.  All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence**.

In the event of continuing or progressive **Bodily Injury** or **Property Damage** over any length of time, such **Bodily Injury** or **Property Damage** shall be deemed to be one **Occurrence** and shall be deemed to occur only when such **Bodily Injury** or **Property Damage** first commenced.

Skinner Decl. (Dkt. # 81), Ex. E (adding the Endorsement No. 10 language to the original definition of "occurrence").

According to National Union, these definitions establish that a claim "involving property damage will be treated as one 'occurrence' dating to the time the 'property damage' first commenced."  Def.'s Reply (Dkt. # 106) at 5.  Because, National Union argues, it is undisputed that the water damage incepted during the 2000-01 period — before the National Union policies were in effect — all subsequent damage should be attributed to the date of the original occurrence per National Union's definition of "occurrence," and therefore the damage "occurred" outside the policy period.

In opposition, American Guarantee argues that it has limited its claims against National Union to only the damage that first occurred after the commencement of National Union's policies.  To support this argument, American Guarantee relies on the report of its expert Jim Perrault, who identified certain property damage that did not occur until 2006, 2007, or 2008.  *See* Perrault Decl. (Dkt. # 92), Ex. B (hereinafter "the Perrault Report") at 6-9.  The Perrault Report also confirms that the shopping center was substantially completed before 2003.  *See* Perrault Report at 4-5.  According to American

ORDER – 4

1   Guarantee, because Mr. Perrault has opined that some property damage incepted during

2   the National Union policy period, there is at least an issue of fact as to whether National

3   Union's policies are triggered.

4         National Union's argument in rebuttal on this issue relies primarily on a recent

5   Washington State Court of Appeals opinion regarding the timing of an "occurrence" of

6   water-intrusion property damage, *Certain Underwriters at Lloyds v. Valiant Ins. Co.*, 155

7   Wn. App. 469 (2010).  In *Valiant*, the policy at issue defined "occurrence" to mean an

8   "accident, including continuous and repeated exposure to substantially the same general

9   harmful conditions."  155 Wn. App. at 474.  The property damage at issue in *Valiant* was

10   "extensive water intrusion damage resulting from a variety of construction effects in the

11   building envelope."  155 Wn. App. at 472.  The *Valiant* court held that, even assuming

12   that there was more than one cause of water damage, an "occurrence" can be a

13   "continuing condition or process; it need not be a single, isolated event," and because a

14   construction defect in that case led to "continuous and repeated exposure . . . to harmful

15   moisture that gradually intruded through the building envelope over a five year period

16   from different sources," that water-intrusion damage constituted one "occurrence."  155

17   Wn. App. at 474.[3]

18         The court finds that the facts of *Valiant* are analogous to the facts of this case.

19   When, at oral argument, the court asked American Guarantee why *Valiant* does not

20   support National Union's motion, counsel suggested that *Valiant* is relevant to defining

21   an "occurrence," but National Union's policy is not "occurrence"-based but instead refers

22   only to "property damage."  Because American Guarantee has presented some evidence

---

[3] The *Valiant* court analyzed the policy language in the context of "anti-stacking" language, and declined to consider an alternative argument regarding whether the loss was not covered due to "an endorsement excluding coverage for continuous damage that first occurs before the effective date of the policy."  *Valiant*, 155 Wn. App. at 476.  National Union's argument considered in this section is analogous to the alternative argument not considered by the *Valiant* court, but this court nonetheless finds *Valiant*'s construction of the "occurrence" definition to be instructive here.

28   ORDER – 5

1  that "property damage" occurred during the National Union policy period, it argues that

2  summary judgment would be inappropriate.

3      But American Guarantee's argument with regard to "occurrence" mischaracterizes

4  the National Union policy, given that it *does* use and define the term "occurrence" with

5  regard to coverage: only property damage caused by an "occurrence" during the policy

6  period is covered.  *See* Skinner Decl. (Dkt. # 81), Ex. E.  Furthermore, Endorsement No.

7  10 makes clear that if property damage is continuous, it is considered to be one

8  "occurrence" at the time it first occurs.

9      Assuming that the Perrault Report accurately describes the property damage at the

10 Gresham Station Shopping Center — an assumption challenged by National Union (see

11 Def.'s Reply (Dkt. # 106) at 8 n.2) — even Mr. Perrault agrees that the water intrusion

12 started before 2004.  *See* Perrault Report at 5.  The fact that the damage was ongoing and

13 continued into the National Union policy period does not change the fact that it started

14 before the National Union policy period.  Because the National Union policy specifies

15 that ongoing and continues property damage is considered to be one "occurrence" on the

16 date of its first inception, and the first inception of the water intrusion here was before

17 2004, the "occurrence" of property damage caused by water intrusion took place before

18 the earliest National Union policy period.  Thus, no National Union policy covers the

19 Bayley loss.

20 **C.    Travelers is Entitled to Judgment as a Matter of Law Because Travelers'**
         **2001-2005 Policies Expressly Exclude Property Damage Covered by Other**
21       **Travelers' Policies.[4]**

22      Travelers paid the $1 million policy limits on Bayley's 2000-01 policy into the

23 settlement fund, but American Guarantee  asserts that additional coverage under other

24 Travelers' policies — for policy periods 2001-02, 2002-03, 2003-04, and 2004-05 —

25

26  [4] American Guarantee moved to strike portions of National Union's and Travelers' reply briefs
    and some of the supporting evidence submitted, but none of the disputed portions were relied
    upon in resolving either motion.  Thus, the motions to strike are denied as moot.

27

28 ORDER – 6

should also be triggered.[5]  According to Travelers, "anti-stacking" language in those

policies precludes coverage because Travelers paid out on the 2000-01 policy.

        The 2001-02 and 2002-03 policies include the following language:

> We'll pay amounts any protected person is legally required to pay as
> damages for covered bodily injury or property damage that:
>       -happens while this agreement is in effect;
>       -is caused by an event; and
>       -is not property damage covered by another insurance policy issued
>       to you by us or any of our affiliated insurance companies, unless
>       such policy was purchased specifically to apply in excess of the
>       limits of coverage that apply under this agreement.

Ciechanowski Decl. (Dkt. # 80), Ex. 8.  The 2003-04 and 2004-05 policies include this

language:

> We'll pay amounts any protected person is legally required to pay as
> damages for covered bodily injury or property damage that:
>       -happens while this agreement is in effect;
>       -is caused by an event; and
>       -is not covered by any liability insurance policy that was issued to
>       you by us, or any of our affiliated insurance companies, at any time
>       prior to this agreement.

Ciechanowski Decl. (Dkt. # 80), Ex. 9.  In all the relevant policy periods, the policies also

state that in cases of continuing property damage, Travelers considers that type of

damage to "happen at the time that it is first manifested," and "first manifested" means

"first known, or first in a condition where it reasonably should have been known."

Ciechanowski Decl. (Dkt. # 80), Exs. 8 & 9.  Thus, according to Travelers, because the

property damage at Gresham Station first manifested during the 2000-01 policy period

and Travelers paid out on that policy, the property damage "happened" during the 2000-

01 policy period (so any continuing damage during later policy periods is still attributed

to the first manifestation during 2000-01) and the "anti-stacking" language in the policies

preclude coverage under subsequent Travelers' policies because Travelers paid out on the

2000-01 policy.

---

[5] The parties agree that the 2005-06 Travelers policy is not triggered.  *See* Defs.' Reply (Dkt. #
102) at 7 n.13 and Defs.' Opp'n (Dkt. # 88) at 22:5-6.

ORDER – 7

American Guarantee argues in opposition that (1) there is a question of fact regarding the first manifestation of the property damage at Gresham Station, because American Guarantee's expert opined that some property damage incepted each year between 2002 and 2006, and (2) Travelers' "first manifestation" policy language is ambiguous and therefore unenforceable.  The court will address American Guarantee's arguments in turn.

### 1.    The Damage at Gresham Station was Continuing Damage Constituting One "Event."

American Guarantee argues that because its expert has opined that that "new property damage began at Gresham Station each year between 2002 and 2006," that property damage is not "continuing damage" and thus first manifested each year between 2002 and 2006, taking that property damage outside the scope of the "anti-stacking" provision.

To rebut that argument, Travelers points to various places in the record where American Guarantee's experts or designees have testified that the damage in this case is continuous.  For example, American Guarantee's expert Jim Perrault testified in a deposition as follows:

> Q     So all of the conditions identified by you as defective conditions in this case all relate to the lack of and/or improper use of sealants, transitions, flashings, or other systems to preclude water from getting into the building?
>
> A     Yeah.  It would be related to improper detailing including sealants, flashings, et cetera.
>
> Q     Would you agree with me that all of the damage that is identified in this case all results from the same or similar lack of detail, lack of flashings, lack of transitions, lack of means to keep water out of the building?
>
> A     I believe that's correct.
>
> Q     So all of the damage results from substantially the same type of construction defect?
>
> A     Yeah.  Essentially.

ORDER – 8

Smith Decl. (Dkt. # 83), Ex. J at 173:22-174:12.  American Guarantee's Rule 30(b)(6)

designee clarified American Guarantee's position as to the number of "occurrences" of

property damage:

> Q       Is [American Guarantee] alleging or taking the position in this
> case as to [Travelers] that this claim involves multiple occurrences as
> opposed to a single occurrence?
>
> A       We are not taking the position that it's multiple occurrences.

Smith Decl. (Dkt. # 83), Ex. I at 178:18-23.  The designee further testified regarding the

continuous nature of the property damage at Gresham Station, in response to a question

from National Union's attorney:

> Q       I know [Travelers' attorney] chased you around a lot on this
> point.  I want to approach it from a slightly different viewpoint, and that is
> this issue of continuous property damage out at this property.  You
> indicated there are various categories of property damage, and I don't
> expect you to go through all of those.  Can you identify any property
> damage at the Gresham Station that was not continuous in nature?
>
> A       Not that I can think of right now.

Smith Decl. (Dkt. # 83), Ex. I at 247:24-248:7.

Thus, it becomes irrelevant whether Mr. Perrault can attribute some property

damage to specific years between 2002 and 2006, because it is undisputed that the

property damage at Gresham Station was continuous and constitutes one occurrence.

Because Travelers paid out on the policy covering the time period when the building was

completed, and the subsequent damage was a continuation of that damage, Travelers'

"anti-stacking" language precludes coverage under *Valiant*.

As in *Valiant*, Travelers' policies limit recovery to one policy limit per "event"

when the insured holds two or more policies issued by Travelers or its affiliates.  *See*

*Valiant*, 155 Wn. App. at 474.  Because, as the court has explained, it is undisputed that

the property damage at Gresham Station constitutes one occurrence (or "event") of

continuing damage, and Travelers paid the policy limit on the 2000-01 policy, no

subsequent policies cover the Gresham Station loss.

ORDER – 9

1

      **2.     The Endorsement Language is Not Ambiguous.**

2

      American Guarantee argues that Travelers' policies' "first manifested property

3

damage" endorsement language is ambiguous because it is "internally inconsistent."

4

Def.'s Opp'n (Dkt. # 88) at 21.  American Guarantee's example of the internal

5

inconsistency is as follows:

6

     If, under the law that applies, this agreement, without this endorsement, would
     cover any continuation, change or resumption:

7

         -while this agreement is in effect; or
         -after this agreement ends;

8

     of property damage that happened before this agreement begins, which result may
     be called a continuous or multiple trigger of coverage, the following two changes

9

     apply.  But these changes only apply to any such continuation, change, or
     resumption of property damage which this agreement, without this endorsement,

10

     would cover.

11

     [Change No. 1:]  We'll pay amounts any protected person is legally required to
     pay as damages for . . . property damage that [] happens while this agreement is in

12

     effect[.]
     . . .

13

Ciechanowski Decl. (Dkt. # 80), Ex. 8.  According to American Guarantee, "Clearly, the

14

endorsement becomes oxymoronic because two contradictory ideas are combined: the

15

endorsement applies if property damage first manifests before the policy period but only

16

pays if property damage first manifests during the policy period."  Def.'s Opp'n (Dkt. #

17

88) at 21-22.

18

      American Guarantee's argument is based on a misreading of the endorsement.

19

The two quoted paragraphs do not contradict each other.  The first paragraph explains

20

that to whatever extent the policy (without the endorsement) would cover a continuation

21

of property damage that first manifested before the policy period, the endorsement

22

applies to expressly preclude such coverage.  American Guarantee has not identified any

23

ambiguity, and thus the court will apply the "first manifested property damage"

24

endorsement as written.

25

26

27

28

ORDER – 10

### 3. American Guarantee's Other Arguments are Irrelevant to the Issues Presented in Travelers' Motion.

American Guarantee's Opposition brief includes sections addressing American Guarantee's own obligation to pay into the settlement fund, whether an insurer who did not settle with an insured can allocate settlement proceeds post-settlement, and Travelers' alleged failure to keep American Guarantee informed before settlement of the underlying lawsuit. None of these issues have any bearing on Travelers' motion, which asks the court to construe whether Travelers' policies cover the loss at Gresham Station. Having found that none of the disputed policies do cover such loss, due to the "first manifestation" endorsement, the court will grant Travelers' motion.

## D. American Guarantee's Summary Judgment Motion is Denied as Moot.

American Guarantee also moved for partial summary judgment, asking the court to bar Travelers "from arguing that, in settling the claims against Bayley, American Guarantee paid for damages that it was not contractually obligated to pay, and therefore, that American Guarantee must, to recover from [Travelers], affirmatively prove coverage under each of [Travelers'] policy period worth at least $6,000,000[.]" Def.'s Mot. (Dkt. # 79) at 6-7. Travelers argues in opposition that "[w]hether or not the $4 million paid by American Guarantee in the settlement of the claims against Bayley represents covered property damage under the American Guarantee policies is irrelevant to the claims against Travelers." Def.'s Opp'n (Dkt. # 86) at 2.

The court agrees with Travelers that it "is unclear what relief American Guarantee is requesting from this Court." Def.'s Opp'n (Dkt. # 86) at 2. American Guarantee's cross-claims against Travelers center on an analysis of *Travelers*' policies and whether they cover the Bayley loss; Travelers has not argued in defense of American Guarantee's cross-claims that American Guarantee paid more into the settlement fund than it was contractually obligated to pay. *See* Def.'s Opp'n (Dkt. # 86) at 6. Thus, it appears that

ORDER – 11

American Guarantee's motion seeks to prevent Travelers from making an argument that it does not attempt to make.

American Guarantee's Reply brief does not necessarily clear up the confusion. It summarizes the relief requested:

> In sum, when American Guarantee contributed $ 4 million to Bayley's settlement, and insisted on the specific language in paragraphs C and N, it was willing to reserve Travelers' manifestation/ one-policy-limit position for future resolution. But American Guarantee specifically negotiated for Travelers' agreement that American Guarantee's contractual obligation to pay for damages for covered property damage was at least $3.5 million. . . . Travelers [may] not now contradict or repudiate its agreement.

Def.'s Reply (Dkt. # 99) at 5. It does not appear that Travelers is attempting to contradict or repudiate that agreement, so American Guarantee's motion is moot.

## IV.   CONCLUSION

For the reasons stated above, the Defendants' motions (Dkt. ## 77, 78) are GRANTED, and Defendant's motion (Dkt. # 79) is DENIED as moot.

DATED this 15th day of October, 2010.

The Honorable Richard A. Jones
United States District Judge

ORDER – 12